UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PASTOR DEAN J. SANDSTROM,

Plaintiff,

v.

PAUL WENDELL, JR, individually
and in his official capacity as
Chautauqua County Executive, et al.,

Defendants.

**DECISION AND ORDER**

1:23-CV-00405 EAW

## <u>INTRODUCTION</u>

*Pro se* plaintiff Dean J. Sandstrom ("Plaintiff") brings this action against defendants Chautauqua County Executive Paul Wendell, Jr., Chautauqua County Director of Real Property Services Kim A. Meleen, Assistant Chautauqua County Attorney Todd Thomas, Town of Carrol Tax Collector Susan Rowley, Town of Carrol Tax Assessor Tera Darts, and City of Jamestown Tax Assessor Lisa Volpe (collectively "Defendants").  (Dkt. 1).

Plaintiff initially filed the lawsuit on behalf of himself and The Church of Holy Redemption ("the Church").   The Court advised the Church that, as a non-profit association, it could not proceed *pro se* and needed to retain counsel if it wished to pursue the claims asserted in this matter.  (Dkt. 2).  Plaintiff filed a motion for reconsideration (Dkt. 13), which was denied (Dkt. 16).  When the Church failed to retain counsel by the extended deadline, its claims were dismissed.  (*See id.*).  Plaintiff then filed a motion to join the Dean Joseph Sandstrom Trust ("the Trust") as a plaintiff.  (Dkt. 18).  The Court

denied the motion without prejudice because Plaintiff did not provide a proposed amended pleading explaining the basis for joinder of the Trust, and further advised that the Trust could not appear in the case without representation by counsel. (Dkt. 19).

Presently before the Court is a motion to dismiss the complaint filed by defendants Tera Darts, Kim A. Meleen, Todd Thomas, and Paul Wendell, Jr. (collectively "County Defendants"). (Dkt. 14). Plaintiff filed a response in opposition on August 22, 2023 (Dkt. 21), and County Defendants filed a reply on September 5, 2023 (Dkt. 23). For the reasons set forth below, County Defendants' motion is granted and the claims against those defendants are dismissed without prejudice.[1]

## BACKGROUND

The following facts are taken from Plaintiff's complaint. (Dkt. 1). As required at this stage of the proceedings, the Court treats Plaintiff's factual allegations as true.

The Church is a religious institution in Western New York that owns real property that is used for religious exercises and community services and Plaintiff is the Church's pastor. (*Id.* at ¶¶ 16, 17, 27). On December 12, 2015, Plaintiff created the Trust, a private

---

[1] The complaint is not dismissed as to defendants Lisa Volpe or Susan Rowley. Counsel for Lisa Volpe filed an answer on June 15, 2023. (Dkt. 12). On August 25, 2023, she filed a response to Plaintiff's submission in opposition to the pending motion to dismiss inexplicably stating that "by Order of the Court . . . this matter is and has been dismissed since July 17, 2023." (Dkt. 22). While the Church was dismissed as a party in July of 2023 in light of its failure to obtain counsel, nothing in any of the Court's orders dismissed Plaintiff's claims. Defendant Susan Rowley has not appeared through counsel, or answered or otherwise moved against Plaintiff's complaint. Nonetheless, because the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims, it will issue an order to show cause directing Plaintiff to set forth sufficient reasons as to why the complaint should not also be dismissed against defendants Lisa Volpe and Susan Rowley for lack of subject matter jurisdiction.

charitable trust.  (*Id.* at ¶ 34).  On December 15, 2016, Plaintiff incorporated the Church, named the Church as beneficiary of the Trust, and issued 100% of the rights to distribution of the Trust estate to the Church.  (*Id.* at ¶ 35).  The Church owns two real properties, one located at 341 Wiltsie Road, in Frewsburg, New York and a second at 341-343 Forest Avenue in Jamestown, New York (collectively "the properties").  (*Id.* at ¶ 37).  The complaint alleges that "[b]oth properties are used exclusively in furtherance of the Church's purposes, and no pecuniary profit benefits any of the officers or, members, or employees and the Church is not used as a guise for profit-making operations." (*Id.* at ¶ 8).  Plaintiff alleges that the religious belief of the Church prevents him from owning real property.  (*Id.* at ¶ 33).

In February of 2017, the Church provided paperwork to the tax assessors for the Town of Carrol and City of Jamestown notifying them of the conversion of the properties for religious use.  (*Id.* at ¶ 42).  Some five years later, in February of 2022, Defendant Thomas sent a notice of petition and notice of foreclosure to Plaintiff regarding past due property taxes for the properties.  (*Id.* at ¶ 44).  Despite being informed by Plaintiff that the properties had been converted to religious use and were exempt, Defendants concluded that the Church did not meet the legal definition of a church and informed Plaintiff that the conversion some five years earlier was ineffective.  (*Id.* at ¶ 53).

Plaintiff alleges that Defendants impermissibly burdened Plaintiff and the Church's right to free exercise of religion by prohibiting Plaintiff from converting, using, and developing the properties for religious use without any rational or compelling government interest in doing so.  (*Id.* at ¶¶ 19, 20).  Plaintiff further alleges that the Church's religious

beliefs are substantially burdened by having to apply for tax-exempt status, keep records of income and expenses, and provide statements sworn to under oath.  (*Id.* at ¶¶ 29, 32).

## DISCUSSION

## I.   Legal Standards

County Defendants seek dismissal pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The legal standards applicable to each are set forth below.

### A.   Rule 12(b)(1)—Subject Matter Jurisdiction

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it. . . ."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint."  *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.").  In addition, a court is not limited to the allegations in the complaint and can "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in the affidavits," *J.S. v. Attica*

*Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).   "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).

### B.  Rule 12(b)(6)—Failure to State a Claim

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").

## II.   **Plaintiff's Claims**

Plaintiff's first claim in his complaint arises under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*  This statute provides:  "No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling

governmental interest." *Id.* § 2000cc(a)(1). Plaintiff also raises constitutional claims, brought pursuant to 42 U.S.C. § 1983, that include alleged violations of the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Finally, he asserts New York state law claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing.

As relief, Plaintiff seeks declaratory judgment that Defendants' prohibition of the conversion of the properties for religious use violates Plaintiffs' rights pursuant to RLUIPA and the Constitution, entry of injunctive relief enjoining Defendants from prohibiting the conversion, use, and development of the properties for religious use, and an award of compensatory and punitive damages, costs, and attorneys' fees. (Dkt. 1 at 15).

## III.   **The Court lacks Subject Matter Jurisdiction over Plaintiff's Federal Claims**

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted). Although County Defendants pose alternative arguments in support of their motion to dismiss for lack of subject matter jurisdiction, most compelling is County Defendants' argument that the Tax Injunction Act and principles of comity bar the Court's consideration of Plaintiff's federal claims.

The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain,

speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341;

*Campaniello v. New York State Dep't of Tax'n & Fin.*, 737 F. App'x 594, 596 (2d Cir.

2018) ("The TIA is meant to strictly limit federal courts from interfering with local tax

matters. . . .  This prohibition is jurisdictional and strips the federal courts of subject matter

jurisdiction." (citation omitted); *Pan v. City of Niagara Falls*, No. 20-CV-1896 (JLS), 2023

WL 3025149, at *3 (W.D.N.Y. Apr. 19, 2023) ("The Tax Injunction Act prohibits federal

courts from issuing injunctive or declaratory relief in challenges to state tax laws if state

remedies are adequate." (citing *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959

F.2d 395, 400 (2d Cir. 1992))); *Roberts v. NYS Dep't of Tax'n & Fin.*, No. 1:22-CV-0208

(LTS), 2022 WL 1004246, at *3 (S.D.N.Y. Apr. 4, 2022) ("[T]he TIA bars taxpayers from

challenging the payment of state taxes in a federal district court.").  "The principal purpose

of the Tax Injunction Act [is] 'to limit drastically federal district court jurisdiction to

interfere with so important a local concern as the collection of taxes.'"  *California v. Grace

Brethren Church*, 457 U.S. 393, 408-09 (1982) (quoting *Rosewell v. LaSalle National

Bank*, 450 U.S. 503, 522 (1981)); *see also Hibbs v. Winn*, 542 U.S. 88, 107 (2004) ("In

sum, this Court has interpreted and applied the TIA only in cases Congress wrote the Act

to address, *i.e.*, cases in which state taxpayers seek federal-court orders enabling them to

avoid paying state taxes.").

Under the related doctrine of comity, federal courts are restrained "'from

entertaining claims for relief that risk disrupting state tax administration,' including claims

for damages" if state court remedies are plain, adequate, and complete.  *Glob. Leadership

Found. v. City of New York*, No. 22-2095, 2023 WL 3144043, at *1 (2d Cir. Apr. 28, 2023)

(quoting *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010)).  "While the TIA bars injunctive and declaratory relief, 'it is the principle of comity that prevents a taxpayer from seeking damages.'" *DeMartino v. New York State Dep't of Tax'n & Fin.*, No. 22-720, 2023 WL 2563967, at *4 (2d Cir. Mar. 20, 2023) (quoting *Dorce v. City of New York*, 2 F.4th 82, 97 (2d Cir. 2021)); *see also Casciani v. Town of Webster*, 501 F. App'x 77, 80 (2d Cir. 2012) ("Actions under § 1983 seeking damages related to the collection of state taxes are barred by the principle of comity so long as there is a procedurally adequate state alternative procedure for challenging the assessment.").  The comity doctrine is more expansive than the Tax Injunction Act and "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration."  *Levin,* 560 U.S. at 417.

In order for a state remedy to be considered sufficient under the Tax Injunction Act or principles of comity, it need only be procedurally adequate and complete, and the procedures provided under New York law have been deemed to be so.  *See Tully v. Griffin, Inc.*, 429 U.S. 68, 75 (1976) ("It also seems clear that under New York law [plaintiff] can fully preserve its right to challenge the amount of tax due while litigating its constitutional claim that no tax at all can validly be assessed against it."); *Casciani*, 501 F. App'x at 80 ("Because New York has procedurally adequate mechanisms for challenging tax assessments, *see Joseph v. Hyman*, 659 F.3d 215, 220-21 (2d Cir. 2011), [plaintiff's] § 1983 damages claim is barred by the principle of comity."); *Roberts,* 2022 WL 1004246, at *3 ("The Supreme Court of the United States has previously concluded that the State of New York's procedures for challenging tax assessments meet the abovementioned 'plain, speedy and efficient' standard. (citing *Tully*, 429 U.S. at 74-77; *Long Island Lighting Co.*

*v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989))).   Specifically, New York provides multiple avenues for a party seeking to challenge a tax assessment or denial of an exemption.   *See, e.g., Henke v. City of Newburgh, N.Y.*, No. 11-CV-3663, 2012 WL 12883587, at *4 (S.D.N.Y. Apr. 30, 2012) ("[T]he remedies available in the New York state courts are sufficient to protect plaintiffs' rights regarding tax assessment challenges, . . . including the procedures in Article 7 of the [Real Property Tax Law], Article 78 proceedings, declaratory judgment actions, and Section 1983 claims in state court."), *aff'd*, 519 F. App'x 55 (2d Cir. 2013).

Here, Plaintiff is attempting to enjoin County Defendants from assessing taxes based on their determination that the Church is not entitled to tax-exempt status.   But Plaintiff has not provided any basis for the Court to conclude that New York does not provide plain, speedy, and efficient remedies through its state court avenues.   Indeed, it does and Plaintiff's claims seeking to prevent the collection of taxes are barred by the Tax Injunction Act, thus depriving this Court of jurisdiction over the claims.   *See*, *e.g.*, *Henke*, 2012 WL 12883587, at *1 (efforts by church to challenge failure to grant tax exempt status barred by Tax Injunction Act).

Further, as to Plaintiff's claims seeking relief not expressly barred by the Tax Injunction Act, principles of comity warrant the Court declining to exercise jurisdiction. The Court examines three factors to assess the applicability of comity principles to assess whether a party's claims may proceed in federal court:   first, whether the case presents issues of economic discrimination that do not involve "classifications subject to heightened scrutiny . . . or fundamental rights"; second, whether the federal and state courts are equally

suited to address the issues; and third, whether the matters in question relate to the party's own tax liability. *Dorce*, 2 F.4th at 100; *see also Glob. Leadership Found. v. City of New York*, No. 21CV10942 (DLC), 2022 WL 2788398, at *2 (S.D.N.Y. July 15, 2022) ("The Supreme Court has identified three factors to distinguish between cases where comity controls and those that may proceed in federal court. . . .  First, a federal court provides a less appropriate forum in cases that do not involve classifications subject to heightened scrutiny or fundamental rights. . . .  Second, comity is more likely to bar cases in which the court must decide whether the inequality should be fixed by leveling up--extending the benefit to all--or leveling down--withdrawing the benefit from all. . . .  And third, state courts and agencies are better suited to hear cases in which the plaintiff's own tax liability is at issue." (citations and quotations omitted)), *aff'd*, No. 22-2095, 2023 WL 3144043 (2d Cir. Apr. 28, 2023).

The Second Circuit decision in *Global Leadership Foundation*, 2023 WL 3144043, is instructive.  In that case, Global Leadership Foundation ("GLF"), a non-profit secular charity established to promote educational and cultural enrichment for students, applied for and was denied multiple requests for property-tax exemptions. *Id.* at *1.  GLF also opposed increases in the assessment value of its property. *Id.*  In its complaint, GLF alleged that the denial of tax exemptions and increase in the assessed value of its property were acts of retaliation and discrimination. *Id.* at *1.  GLF brought "claims pursuant to 42 U.S.C. § 1983 for violations of the Free Speech Clause, Establishment Clause, Due Process Clause, and Equal Protection Clause, as well as claims against the City for municipal liability." *Glob. Leadership Found.*, 2022 WL 2788398, at *2.  The Second Circuit

affirmed the district court's determination that the court lacked subject matter jurisdiction over all of Plaintiff's claims based on the Tax Injunction Act and comity doctrine, despite the inclusion of claims alleging core First Amendment rights. 2023 WL 3144043 at *2.

So too here, the crux of the claims in Plaintiff's complaint concern his allegations that the Church is substantially burdened by having to apply for tax-exempt status and that the denial of his applications for that status were unconstitutional and violative of his federal and constitutional rights. Each of his federal claims amount to a challenge of the denial of the Church's tax-exempt status and constitute an effort to disrupt state tax administration. Although, like GLF, Plaintiff asserts claims implicating fundamental rights under the Free Speech and Establishment Clauses and that weighs in his favor on a comity assessment, the other factors weigh in favor of a state forum, particularly where the remedies available in state court are adequate and the challenges raised are not to an unconstitutional government program, but rather, to claims arising out of Plaintiff's own tax liability. Accordingly, despite Plaintiff's attempts to recharacterize his claims as amounting to a zoning challenge, or a suggestion that the assessment exceeded the jurisdictional limits for tax assessors, Plaintiff has not plausibly alleged any burden on his religious beliefs apart from having to apply for tax-exempt status or being required to pay taxes. At its core, Plaintiff is seeking a federal court ruling on a local tax matter, which is specifically circumscribed by the Tax Injunction Act and principles of comity. *See Pan*, 2023 WL 3025149, at *4 ("Therefore, because procedurally adequate state remedies, such as a § 1983 action in state court, are available to [Pan], his constitutional objections to the [City's] tax assessment should be lodged in state court, not federal court. . . . For these

reasons, the Court lacks jurisdiction over Pan's Section 1983 claims challenging his property assessments and the City's tax administration scheme." (quotation and citation omitted)); *Carnivale v. City of New York*, No. 17-CV-1868 (WFK), 2017 WL 5558646, at *2 (E.D.N.Y. Apr. 24, 2017) ("Here, although Plaintiff cites to the Fourth, Fifth and Fourteenth Amendments to the Constitution, essentially he is asking this Court to determine that he does not owe property taxes the City has determined are due and owing."), *aff'd*, 711 F. App'x 59 (2d Cir. 2018); *Cmty. Programs of Westchester of Jewish Cmty. Servs. v. City of Mount Vernon*, No. 06 CIV. 3332 SCRGAY, 2007 WL 2981915, at *2 (S.D.N.Y. Oct. 9, 2007) ("In this case, plaintiff challenges the denial of tax exempt status to its property. However, plaintiff cannot deny that a plain, speedy and efficient remedy exists for it in the New York state courts. . . . Moreover, the fact that plaintiff ascribes discriminatory animus to defendants does not allow this Court to exercise jurisdiction."); *see also Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 386 (6th Cir. 2017) (dismissing claims for violations of Religious Freedom Restoration Act, RLUIPA, and Establishment Clause brought by religious nonprofit organization challenging denial of its application for retroactive property tax exemption on grounds that the Tax Injunction Act and comity principles barred action).

## IV.    Plaintiff's RLUIPA Claim

Although there are plenty of cases within this Circuit dismissing constitutional claims on the basis of the Tax Injunction Act and principles of comity, the Court has not found a case in this Circuit dismissing a RLUIPA claim on those grounds, although as referenced above the Sixth Circuit reached that conclusion in *Islamic Ctr. of Nashville*.

Nonetheless, out of an abundance of caution, the Court addresses County Defendants' other arguments with respect to Plaintiff's RLUIPA claim, and concludes that it fails on alternate grounds even if the Court were to conclude that it was not subsumed by the Tax Injunction Act and principles of comity.

### A.      Standing and Ripeness

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted).

"[S]tanding is not dispensed in gross" and "a plaintiff must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quotations omitted). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy [standing's] injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *see also Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way." (emphasis and alteration in original and quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))).

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The Second Circuit has explained:

> To satisfy the requirements of Article III standing, plaintiffs must demonstrate "(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief."

*Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. New York Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)). "These elements are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* (quotation and alteration omitted).

At the pleading stage, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on lack of standing, a plaintiff must "allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (quotation and citation omitted).

County Defendants argue that because the Church owns the property and owes the property taxes, as such, it is the only entity with standing to assert any of the claims in Plaintiff's complaint. (Dkt. 14-2 at 7-16). However, Plaintiff specifically alleges that he is the pastor of the Church and has a leasehold interest in the properties. (Dkt. 21 at 4). Moreover, it appears that he resides at one of the properties. (*See* Dkt. 1 at 20, 54 (identifying Plaintiff's address as 341 Wiltsie)). RLUIPA permits a claim to be asserted by an individual with "an ownership, leasehold, easement, servitude, or other property

interest in the regulated land," 42 U.S.C. § 2000cc-5(5), and the Second Circuit has confirmed that property ownership in the subject property is not required to establish standing for a RLUIPA claim, *see Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 201 (2d Cir. 2014) ("There can be little doubt that Rabbi Eisenbach has met the constitutional requirements of Article III standing to assert his RLUIPA claim.  At a minimum, Rabbi Eisenbach alleged that he intended to live at the proposed facilities.  The HDC's denial of the Chabad's application, and the conditions it imposed on any renewed application, thus deprived Rabbi Eisenbach of the ability to live in the facilities as proposed, an injury that may be redressed by relief from the district court."); *see also Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F. Supp. 3d 600, 614 (D. Conn. 2022) ("Under Second Circuit law, a plaintiff need not have a legally cognizable property interest in order to have Article III standing to bring a claim pursuant to RLUIPA. . . Second, Plaintiff has alleged discrimination, which is a sufficient injury in fact to pursue RLUIPA claims."); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 592 (S.D.N.Y. 2013) (finding that trained rabbis who sought to live and to teach at a planned rabbinical college affected by zoning ordinances had standing to assert RLUIPA claim), *aff'd,* 945 F.3d 83 (2d Cir. 2019).

Relatedly, "constitutional ripeness" is "a specific application of the actual injury aspect of Article III standing" *i.e.*, an injury-in-fact. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013); *see also Rabbi Israel Meyer Hacohen Rabbinical Seminary of Am. v. Town of Putnam Valley*, No. 21 CV 07050 (NSR), 2022 WL 4357933, at *9 (S.D.N.Y. Sept. 20, 2022) ("The doctrine of ripeness is closely related to the doctrine

of standing."), *appeal withdrawn*, No. 22-2746, 2022 WL 19571119 (2d Cir. Dec. 9, 2022). "Constitutional ripeness, in other words, is really just about the first [standing] factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Nat'l Org. for Marriage*, 714 F.3d at 688 (citation omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (To establish standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'" (internal quotation and citations omitted)).

While in the instant context, "exhaustion of administrative remedies is not required for RLUIPA claims," *Murphy v. Zoning Comm'n of Town of New Milford*, 223 F. Supp. 2d 377, 382 & n.3 (D. Conn. 2002) ("The Supreme Court's reasoning in *Patsy v. Board of Regents*, 457 U.S. 496 (1982), as to why exhaustion is not a prerequisite to a § 1983 claim, is equally applicable to claims under RLUIPA."), a RLUIPA claim nevertheless must be ripe for review, *Young Men's Christian Ass'n of Greater Rochester v. Town of Milo*, 563 F. Supp. 3d 71, 81 (W.D.N.Y. 2021). "Federal suits in the land-use context, like this one, are generally not ripe for adjudication until a landowner receives a final, definitive decision on a land-use application." *Vill. Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 290 (2d Cir. 2022); *see also Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 351 (2d Cir. 2023) ("So long as a plaintiff has submitted a meaningful application to municipal agencies to address its land-use controversy, and the municipal entity responsible for the relevant zoning laws has had an opportunity to commit to a

position 'that by all accounts, it intends to be final,' the parties' dispute is sufficiently final for ripeness purposes." (quoting *Vill. Green at Sayville*, 43 F.4th at 297-98)); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005) (explaining that "the Supreme Court has developed specific ripeness requirements applicable to land use disputes," including that the plaintiff "was required to obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations").

Here, Plaintiff has not alleged that he submitted a meaningful application to challenge the controversy or gave Defendants an opportunity to commit to a position intended to be "final."   Plaintiff does not allege that he completed the necessary requirements to challenge the properties' status, commenced any appeal of the determination, or that such efforts would be futile, weighing against a finding that the claims are ripe.  *See Rabbi Israel Meyer Hacohen Rabbinical Seminary of Am.*, 2022 WL 4357933, at *1 (granting motion to dismiss on grounds that RLUIPA claim was not ripe because decision was not final); *see also Structure Tone, LLC v. Charter Oak Fire Ins. Co.*, No. 23-CV-5015 (JPO), 2023 WL 8850073, at *2 (S.D.N.Y. Dec. 21, 2023) ("[T]he court made clear that this issue implicates subject matter jurisdiction, because a sufficiently ripe dispute is necessary to satisfy Article III's 'actual case or controversy' requirement.").  On this basis, Plaintiff's RLUIPA claim is not ripe for review and is subject to dismissal for a lack of subject matter jurisdiction.

**B.      Failure to State a Claim**

Alternatively, even if the Court possessed subject matter jurisdiction over Plaintiff's RLUIPA claim, the claim must be dismissed on the merits because Plaintiff has not alleged the existence of a land use regulation that has substantially burdened his religious beliefs. Under RLUIPA, "the term 'land use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), . . ."  42 U.S.C.A. § 2000cc-5.

In *Faith Temple Church v. Town of Brighton*, 405 F. Supp. 2d 250 (W.D.N.Y. 2005), the Court held that a town's eminent domain proceedings did not constitute "land use regulation" for purposes of RLUIPA because RLUIPA's statutory definition expressly limits its application to zoning and landmarking laws that restrict development or use of property.  *Id.* at 254-55.  The court noted that "landmarking laws" "generally involve the 'regulat[ion] and restrict[ion of] certain areas as national historic landmarks, special historic sites, places and buildings for the purpose of conservation, protection, enhancement and perpetuation of these places of natural heritage.'" (quoting N.Y. Village L. § 7-700).  Likewise, "zoning laws" in New York state are designed "'to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . .' within their borders."  *Id.* (quoting N.Y. Town L. § 261).  The Court concluded that although eminent domain proceedings involve land, it was a distinct concept not covered by zoning or landmarking regulations, such that

application to RLUIPA was warranted.  *Id.* at 258; *see also Ripley v. City of Olean, New York*, No. 18-CV-00941-LJV-JJM, 2019 WL 4396074, at *1 (W.D.N.Y. Jan. 14, 2019) (deeming a city requirement that contractors performing work within the city be insured, which Amish roofer was unable to satisfy because of his religion, did not constitute a land use regulation), *adopted*, No. 18-CV-941, 2019 WL 4394189 (W.D.N.Y. Sept. 13, 2019); *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 998 (7th Cir. 2006) (holding that "a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest" and that an annexation statute did not fall within that definition (quoting *Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002))); *Colorado Springs Fellowship Church v. City of Colorado Springs*, No. 21-CV-1368-WJM-MEH, 2022 WL 344895, at *4 (D. Colo. Feb. 4, 2022) (laws relating to tenants' rights and eviction proceedings did not constitute land use zoning or landmarking laws covered by RLUIPA); *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *20 (S.D. Fla. Aug. 30, 2021) (holding that party failed to state RLUIPA claim where emergency masking and stay-home orders issued during Covid-19 pandemic were "not zoning or landmarking laws, nor do they involve the application of zoning or landmarking laws"), *adopted*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021), *aff'd,* No. 21-13476, 2023 WL 2669904 (11th Cir. Mar. 29, 2023).

Here, Plaintiff has not alleged that his desired use of the property for religious purposes was prohibited by any land use regulation related to a zoning or landmarking law. Rather, the burden identified by Plaintiff relates solely to the application for and denial of

the Church's tax-exempt status.  (See Dkt. 21 at 26 ("Plaintiff Sandstrom asserts that the defendants' actions, especially regarding the tax-exempt status of the properties in question, are a clear violation of his rights under (RLUIPA)."); 27 ("The consistent and pronounced neglect Sandstrom experienced in his attempts to secure attention for his tax-exempt applications exemplifies such a burden [pursuant to RPLUIPA].")).  In other words, Plaintiff does not cite to any land use regulation relating to zoning or landmarking to support his RLUIPA claim, but instead claims that his religious beliefs are being substantially burdened by Defendants' tax determination for the properties.  Indeed, Plaintiff's complaint does not identify any restriction that actually limits his ability to practice his religion at the properties unrelated to the properties' tax status.  For these reasons, Plaintiff's RLUIPA claim fails to plausibly state a claim upon which relief can be granted.

## V.   __State Law Claims__

Having determined, for the reasons set forth above, that Plaintiff has not asserted viable federal claims, the Court considers whether it should exercise supplemental jurisdiction over his state law breach of implied contract and breach of implied covenant of good faith and fair dealing claims.  Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Where, as here, it is determined that the Court lacks subject matter jurisdiction over the asserted federal claims or that they

otherwise fail to state a claim, it is appropriate to dismiss the state law claims and not exercise supplemental jurisdiction. *See Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021) ("Where a district court dismisses all federal claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, however, the district court is *precluded* from exercising supplemental jurisdiction over the remaining state-law claims."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("It follows that when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims."); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where "federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50 (1988)).

Accordingly, Plaintiff's state law breach of implied contract and breach of implied covenant of good faith and fair dealing claims are dismissed without prejudice.

## VI.  <u>Leave to Amend</u>

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks omitted).  However, leave to amend pleadings is properly denied where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)

("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not

an abuse of discretion to deny leave to amend."); *Myers v. Sperazza*, 11-CV-292(JTC),

2012 WL 6690303, at *1 (W.D.N.Y. Dec. 21, 2012) (dismissing *pro se* complaint without

leave to amend because "there is no indication a valid claim can be stated and the court has

determined that leave to amend the complaint would be futile").

Here, the deficiencies with Plaintiff's complaint, including most significantly this

Court's lack of subject matter jurisdiction, cannot be cured with better pleadings.  Thus,

although the Court is cognizant of Plaintiff's *pro se* status, the Court concludes that

allowing Plaintiff an opportunity to file an amended complaint would be an exercise in

futility.

<b><u>CONCLUSION</u></b>

For the reasons set forth above, County Defendants' motion to dismiss (Dkt. 14) is

granted, and Plaintiff's claims are dismissed without prejudice as to defendants Kim A.

Meleen, Todd Thomas, Paul Wendell, Jr., and Tera Darts.  The Clerk of Court is directed

to terminate these defendants from this action.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 22, 2024
        Rochester, New York